■ HAMLIN BEACH CAMPING, CATERING, & CONCESSIONS CORPORATION, Respondent, v STATE OF NEW YORK, Appellant. [756 NYS2d 354] —Spain, J. Appeal from an order of the Court of Claims (Collins, J.), entered April 9, 2002, which, inter alia, partially denied defendant's motion for summary judgment.

In June 1999, claimant and the New York State Office of Parks, Recreation and Historic Preservation (hereinafter NYS Parks) reached an oral agreement pursuant to which claimant was to renovate and exclusively operate a food concession and catering business out of a state-owned building located at Hamlin Beach State Park in Monroe County. Claimant began its occupancy in July 1999 and, apparently, fully performed its obligations under the agreement, including extensive capital investments and renovations. Following further negotiations, claimant signed a written license agreement on November 4,

1999; however, it was never signed—as required by its express terms—by the Comptroller or Attorney General. On May 23, 2000, NYS Parks informed claimant that it was terminating the contract, which had never been executed by defendant.

Plaintiff then commenced this action against defendant alleging breach of contract, written and implied, and fraudulent/negligent misrepresentation and seeking monetary damages of $2.275 million. Defendant's answer asserted State Finance Law § 112 as an affirmative defense and, following joinder of issue, defendant moved for summary judgment dismissing the claim in its entirety, asserting that the Comptroller had never approved the contract as required by the terms of the license agreement and State Finance Law § 112, which precluded all of claimant's causes of action. The Court of Claims granted defendant's motion on the cause of action for breach of an express contract based upon the terms of the license agreement requiring Comptroller approval, but denied the motion with respect to claimant's two other causes of action finding that defendant had failed to prove the value of the license so as to trigger the requirement for Comptroller approval contained in State Finance Law § 112.

On defendant's appeal, we agree with its contention that it was entitled to summary judgment dismissing the claim in its entirety. State Finance Law § 112 (3) provides that contracts, such as the license agreement, wherein defendant "agrees to give a consideration other than the payment of money, when the value or reasonably estimated value of such consideration exceeds [$10,000], shall not become a valid enforceable contract unless such contract * * * shall first be approved by the comptroller and filed in his [or her] office." The license agreement here provided that the term of the license would be from June 6, 1999 through December 31, 2004, and contemplated that, in exchange for the privileges granted therein to claimant for the use of state property—i.e., the nonmonetary consideration that defendant would agree to give—claimant would pay defendant a monthly license fee based upon a graduated percent of the gross sales receipts received by claimant for food and other services provided under the license agreement and a percentage of the receipts from the rental of camping equipment, and invest a minimum of $38,400 in specified capital improvements.

Upon review, we find that—despite defendant's neglect to submit any other proof of the fair market rental value of the licensed premises or the reasonably estimated value of the privileges conferred by defendant in the license agreement—

the terms of the license agreement itself sufficiently establish, as a matter of law, that "the value or reasonably estimated value" of the nonmonetary consideration which defendant would have been agreeing to give claimant exceeded the $10,000 threshold which triggers the State Finance Law § 112 (3) requirement for Comptroller approval (*cf. Pixel Intl. Network v State of New York*, 267 AD2d 821 [1999], *lv dismissed and denied* 94 NY2d 942 [2000]). On the issue of whether the required approval was ever obtained, defendant relied upon unrefuted evidence that the Comptroller returned the license agreement to NYS Parks without approval, including an affidavit and the copy of the license agreement submitted by claimant which is signed only by its president, with the signature spaces for NYS Parks' representatives, the Attorney General, and the Comptroller left blank. Claimant's affidavit in opposition at best raises an issue as to whether a representative of NYS Parks had signed a copy of the license agreement; however, approval by a state agent, such as a representative of NYS Parks, cannot satisfy the State Finance Law § 112 (3) condition precedent of *Comptroller* approval (*see Rosefsky v State of New York*, 205 AD2d 120, 124-125 [1994]; *Matter of Konski Engrs. v Levitt*, 69 AD2d 940, 941 [1979], *affd* 49 NY2d 850 [1980], *cert denied* 449 US 840 [1980]; *cf. Park v State of New York*, 226 AD2d 153, 154 [1996]) and, indeed, agents of defendant cannot waive the provisions of State Finance Law § 112 (*see Matter of Konski Engrs. v Levitt, supra*; *Blatt Bowling & Billiard Corp. v State of New York*, 14 AD2d 144 [1961]).

Addressing claimant's causes of action, we note that claimant did not file a notice of appeal and, thus, its efforts to challenge the Court of Claims' grant of summary judgment to defendant on the breach of an express, written contract cause of action is unavailing (*see Raab v Dumblewski*, 226 AD2d 1021, 1022 [1996]). In any event, the license agreement expressly provided that it "shall not become effective until it has been approved by * * * the Comptroller" and clearly apprised claimant that it was subject to the provisions of State Finance Law § 112, which were outlined as well. The failure to obtain such approval as required by State Finance Law § 112 (3) is a complete bar to recovery based upon a breach of that executory contract (*see Parsa v State of New York*, 64 NY2d 143, 147 [1984]; *Nevins Realty Corp. v State of New York*, 240 AD2d 480 [1997]; *Rosefsky v State of New York, supra* at 124-125; *Matter of Konski Engrs. v Levitt, supra*; *Becker & Assoc. v State of New York*, 65 AD2d 65, 67 [1978], *affd* 48 NY2d 867 [1979]; *Blatt Bowling & Billiard Corp. v State of New York, supra*).

Further, we reject claimant's contention, premised upon

State Finance Law § 112 (2) (a) and apparently raised for the first time on appeal, that—despite the fact that the Comptroller never approved it—the license agreement became a binding contract due to the Comptroller's failure to make a "final written determination with respect to [the] approval of such contract within [90] days of the submission of such contract to his or her office" or request an extension of time in which to do so (State Finance Law § 112 [2] [a]). State Finance Law § 112 (2) (a) requires Comptroller approval of a contract if it "exceeds [$10,000]" (later amended by L 2000, ch 95 to increase amount to $15,000) and is inapplicable to this license agreement which did not contemplate a state expenditure (*cf. City of New York v State of New York*, 87 NY2d 982, 985-986 [1996]); rather, the license agreement involved defendant "agree[ing] to give a consideration other than the payment of money" and, as such, is governed by State Finance Law § 112 (3), which does not contain a comparable time line for Comptroller approval (*see Pixel Intl. Network v State of New York, supra* at 822-823; *Rosefsky v State of New York, supra* at 123-125).

Moreover, interpreting the Comptroller's noncompliance with the time line provision for approval contained in State Finance Law § 112 (2) (a) as creating a contract is not supported by the language of the statute or the legislative history and would undermine the very purpose of such approval, i.e., "protect[ing] the public from governmental misconduct or improvidence" (*Parsa v State of New York, supra* at 147; *see City of New York v State of New York, supra* at 985; *Rosefsky v State of New York, supra* at 125; *see also Royal Ins. Co. of Am. v Commissioners of State Ins. Fund*, 289 AD2d 807, 808 [2001]; *Matter of Laborers' Intl. Union of N. Am., Local No. 17 v New York State Dept. of Transp.*, 280 AD2d 66, 70 [2001]). Notably, however, those attempting to do business with state entities may seek judicial review of the Comptroller's refusal to approve a contract in a CPLR article 78 special proceeding (*see* CPLR 7803 [3]; *Matter of Konski Engrs. v Levitt, supra* at 941).

In addition, defendant is entitled to summary judgment dismissing claimant's implied-in-law contract (or quasi contract) claim, for money had and received, which is an equitable cause of action premised upon unjust enrichment, which is founded not on a contract or agreement but, rather, on "an obligation which the law creates *in the absence of agreement* when one party possesses money that in equity and good conscience [the party] ought not to retain and that belongs to another" (*Parsa v State of New York*, 64 NY2d 143, 148 [1984], *supra* [emphasis added]; *see Board of Educ. of Cold Spring*

*Harbor Cent. School Dist. v Rettaliata*, 78 NY2d 128, 138 [1991], *lv dismissed* 80 NY2d 822 [1992]; *Matter of Witbeck*, 245 AD2d 848, 850 [1997]; *Rosefsky v State of New York, supra* at 123-124). However, claimant concedes and avers that the parties reached either an oral or a written agreement and seeks enforcement of that agreement, entirely undermining a quasi contract claim, and fails to allege or demonstrate that defendant received or is holding sums of money to which it is entitled (*see Parsa v State of New York, supra* at 151; *SHLP Assoc. v State of New York*, 262 AD2d 548, 549 [1999]; *Rosefsky v State of New York, supra*).

To the extent that the claim is premised upon the conduct or implied promises of representatives of NYS Parks or other state agents, it is an implied-in-fact contract cause of action which is subject to the indispensable Comptroller approval provisions of State Finance Law § 112 (*see Parsa v State of New York, supra* at 148; *SHLP Assoc. v State of New York, supra* at 548, 548; *Campbell v State of New York*, 158 AD2d 937 [1990], *lv denied* 75 NY2d 710 [1990]). Despite any implied promises that state agents may have made or indicated by their conduct, it is well-settled law that defendant's acceptance of benefits under a contract not properly approved "does not estop it from challenging the validity of the contract or from denying liability pursuant to it" (*Parsa v State of New York, supra* at 147; *Rosefsky v State of New York, supra* at 124; *Becker & Assoc. v State of New York*, 65 AD2d 65, 67-68 [1978], *supra*). Claimant's allegations regarding negligent or fraudulent misrepresentation by NYS Parks employees similarly cannot circumvent the provisions of State Finance Law § 112, as the license agreement clearly apprised claimant of the Comptroller approval requirement and, in any event, agents or officers of the state have no power to waive these provisions (*see Matter of Konski Engrs. v Levitt*, 69 AD2d 940, 941 [1979], *supra*; *Becker & Assoc. v State of New York, supra* at 67).

Finally, in dismissing the claim in its entirety, we reiterate that "while claimant, and others doing business with [defendant], may occasionally suffer what appears to be the unjust consequences of State Finance Law § 112, the overall benefit accruing to the citizens of [defendant] from its application has been determined, by the Legislature, to be worth the risk of such a casualty, ostensibly because contracting parties are better able to protect themselves from State Finance Law § 112 than the people would be to protect themselves without it" (*Rosefsky v State of New York, supra* at 125; *see Matter of Konski Engrs. v Levitt, supra* at 941).

Cardona, P.J., Peters, Carpinello and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially denied defendant's motion for summary judgment; motion granted in its entirety, summary judgment awarded to defendant and claim dismissed; and, as so modified, affirmed.